## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| TARA LEIGH PATRICK a/k/a CARMEN ELECTRA; CIELO JEAN "CJ" GIBSON; DENISE TRLICA a/k/a DENISE MILANI; JULIANNE KLAREN; RACHEL BERNSTEIN a/k/a RACHEL KOREN; ROSA ACOSTA; ABIGAIL RATCHORD; KEELEY HAZELL; and KIMBERLY "KIM" COZZENS,<br><br>*Plaintiffs*,<br><br>v.<br><br>D. & B. CORP. and MARK FILTRANTI,<br><br>*Defendants*. | Civil Action No.: 19-cv-<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs TARA LEIGH PATRICK a/k/a CARMEN ELECTRA; CIELO JEAN "CJ" GIBSON; DENISE TRLICA a/k/a DENISE MILANI; JULIANNE KLAREN; RACHEL BERNSTEIN a/k/a RACHEL KOREN; ROSA ACOSTA; ABIGAIL RATCHORD; KEELEY HAZELL; and KIMBERLY "KIM" COZZENS (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint ("Complaint") against defendants D. & B. CORP. d/b/a GOLDEN BANANA and MARK FILTRANTI (collectively "Defendants") respectfully allege as follows:

### BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their strip club, Golden Banana located in Peabody, Massachusetts ("Golden Banana" or the "Club").

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of Massachusetts's Unfair Trade Practices Act (M.G.L.A. 93A § 11); d) violation of Massachusetts's right of publicity statute (M.G.L.A. 214 § 3A;  e) defamation; and f) various common law torts, including conversion.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

**JURISDICTION & VENUE**

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      Defendant D. & B. CORP. is a Massachusetts corporation with its principal place of business located at 11 North End Boulevard, Salisbury, Massachusetts, 01952.  D. & B. CORP. operates Golden Banana, which is located at 151 R Newbury Street, Peabody, Massachusetts, 01960.

7.      Venue is proper in the United States District Court for the District of

Massachusetts because Peabody, Massachusetts is Defendants' principal place of business.

8.       Primarily and substantially the alleged causes of action arose and accrued in Peabody, Massachusetts and the center of gravity for primarily and substantially all relevant events alleged in this complaint is predominately located in Peabody, Massachusetts.

## PARTIES

*Plaintiffs*

9.       Plaintiff Tara Leigh Patrick a/k/a Carmen Electra ("Electra") is a well-known professional model, actress, recording artist and businesswoman, and a resident of Los Angeles, California.

10.      Plaintiff Cielo Jean "CJ" Gibson ("Gibson") is a well-known professional model, and a resident of Hillsborough County, Florida.

11.      Plaintiff Denise Trlica a/k/a Denise Milani ("Milani") is a well-known professional model, and a resident of Los Angeles County, California.

12.      Plaintiff Julianne Klaren ("Klaren") is a well-known professional model, and a resident of Los Angeles County, California.

13.      Plaintiff Rachel Bernstein a/k/a Rachel Koren ("Koren") is a well-known professional model, and a resident of Los Angeles County, California.

14.      Plaintiff Rosa Acosta ("Acosta") is a well-known professional model, and a resident of Los Angeles County, California.

15.      Plaintiff Abigail Ratchford ("Ratchford") is a well-known professional model, and a resident of Los Angeles County, California.

16.      Plaintiff Keeley Hazell ("Hazell") is a well-known professional model, and a resident of Los Angeles County, California.

17.     Plaintiff Kimberly "Kim" Cozzens ("Cozzens") is a well-known professional model, and a resident of Santa Clara County, California.

*Defendants*

18.     Defendant D. & B. CORP. is a Massachusetts corporation with a  principal place of business, according to its corporate filings, in Salisbury, Massachusetts.  During times relevant to this action, D. & B. CORP. operated Golden Banana in Peabody, Massachusetts.

19.     On information and belief, Defendant MARK FILTRANTI is a Massachusetts resident. According to publicly available records, and upon information and belief, MARK FILTRANTI, in his capacity as principal, owner and/or CEO of D. & B. CORP. maintained operational control over Golden Banana, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

20.     As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

21.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

22.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with Golden Banana.

23.     In the case of every Plaintiff, such appearance was false.

- 4 -

24.     Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

25.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

26.     Tara Leigh Patrick a/k/a Carmen Electra is an actress, recording artist, and entrepreneur. With an impressive body of work that encompasses dance, television, film, comedy and theatre, Carmen Electra has quickly emerged as one of Hollywood's most versatile personalities. Growing up, Ms. Electra attended Cincinnati's School for Creative and Performing Arts. She always knew she was destined to be an entertainer. It was after graduating high school in 1991 that Ms. Electra moved to the City of Angels and caught the eye of Prince, who would go on to produce her self-titled album on his Paisley Park record label. Ms. Electra ultimately ventured into acting with regular roles on Baywatch and the MTV's Singled Out. Ms. Electra has since made the move to the big screen with starring roles in blockbuster hits including Scary Movie, Dirty Love, Cheaper by the Dozen 2, and Meet the Spartans. Ms. Electra won the role as the face of MAX Factor following in the famous footsteps of Marilyn Monroe and Jaclyn Smith. Electrifying, intoxicating and firmly in control, for two years Ms. Electra brought the high-glam attitude of the MAX Factor line to life with style and sensuality. In 2006, Ms. Electra became a published author with the release of her book, "How to be Sexy." She also formed a dance troupe, The Bombshells, who perform nationwide, and she recently released the fitness DVD series, Carmen Electra's

Aerobic Striptease. In 2009, Ms. Electra appeared live on stage in MGM Grand Vegas' Crazy Horse Burlesque Show to sold-out audiences during the summer and fall of the year. In 2010, Carmen starred in the film, Oy Vey, My Son is Gay. Most recently, Ms. Electra starred in the film 2-Headed Shark Attack, alongside Charlie O'Connell, served as a guest judge on Britain's Got Talent, and made reoccurring guest appearances on CW's hit show, 90210. In November of 2012, Ms. Electra released her return-to-music single, "I Like it Loud," featuring Grammy-nominated producer Bill Hamel. The single, which delves into Electra's fun and playful side, marks 20 years since she first busted onto the Hollywood circuit as a pop artist discovered by music legend Prince. "I Like It Loud" hit the #25 spot on Billboard's Dance Club Play Chart and from there, the sultry songstress was on fire, turning up the heat for audiences everywhere, including The Wendy Williams Show, Cyndi Lauper's Home For The Holidays charity event, the notorious White Part in Palm Springs, and most recently, Life Ball in Vienna. In June of 2014, Ms. Electra released 'Werq', which was followed by the release of a music video. This club anthem is all about woman empowerment and the dynamic music video embodied that vision. Now, the electrifying vixen is back with her hottest single yet, 'Around The World'. As a "Thank You" to her global supporters. Carmen released the energizing track in November. The single invites her fans from all corners of the globe to join her and get lost in her music. She will be releasing more music and touring America in 2015. Ms. Electra partnered with Fleshlight to create her own line of personal lubricants geared towards women in August of  2015. In November 2015, Ms. Electra performed a few of her hits in Russia at the "Favourites of the Moon" festival. During that same month, Ms. Electra launched her new perfume, "Carmen Electra", with FragranceNet. Ms. Electra can most recently be seen as the host of WEtv's new reality docuseries "Ex Isle" which premiered January 8th, 2016. She has 3.1 million Facebook followers, 945,177 Instagram followers, and 395,370 Twitter followers.

27.     That we know of, Electra is depicted in the photos in Exhibit "A" to promote Golden Banana on its Instagram page. This Image was intentionally altered to make it appear that Electra was either a stripper working at Golden Banana, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

28.     Electra has never been employed at Golden Banana, has never been hired to endorse Golden Banana, has never been otherwise associated or affiliated with Golden Banana, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

29.     Cielo Jean "CJ" Gibson is an American model who enjoys great success in her industry. Ms. Gibson was the Import Tuner magazine Model Search winner. Ms. Gibson is currently a model for the Falken Drift Team, and can be seen at Formula Drift events. Ms. Gibson has also appeared in several magazines including FHM, American Curves (as a cover model), Supreme, MuscleMag International, Muscle & Fitness, Teeze, and in a Bowflex ad. Ms. Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Ms. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Ms. Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing.

30.     That we know of, Gibson is depicted in the photos in Exhibit "B" to promote Golden Banana on its Facebook page. This Image was intentionally altered to make it appear that Gibson was either a stripper working at Golden Banana, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

31.     Gibson has never been employed at Golden Banana, has never been hired to

endorse Golden Banana, has never been otherwise associated or affiliated with Golden Banana, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

32.     Denise Trlica a/k/a Denise Milani is the world's most famous pinup model, who is frequently names one of the most searched women on the internet. At one point, her self-titled website was the most popular model website in the world. Milani also became the winner of Miss Bikini World 2007. At 21, Milani was given an opportunity to model for SPORTSbyBROOKS as a sports model and posed for such publications as PinupFiles.com. In 2009, Milani was selected as the 99th most desired women in the world by *Askmen Magazine*. In 2011, she was ranked in the 5th position in championship NPC Excalibur Bikini held in Culver City, California. Similarly, in the year 2013, she was one of ten (10) most desirable women in the world. Milani's social media reach has hit almost 648,196 followers on Instagram, almost 6,309,401 Facebook likes, and over 126,075 followers on Twitter.

33.     That we know of, Milani is depicted in the photo in Exhibit "C" to promote Golden Banana on its Facebook page. This Image was intentionally altered to make it appear that Milani was either a stripper working at Golden Banana, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

34.     Milani has never been employed at Golden Banana, has never been hired to endorse Golden Banana, has never been otherwise associated or affiliated with Golden Banana, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

35.     Julianne Klaren is, and at all times relevant to this action is an American model, spokeswoman, businesswomen and mother. Ms. Klaren has been named in the top ten most

beautiful women on Instagram and has been the feature of countless feature interviews and photo shoots. Ms. Klaren was born, raised and still lives in San Diego, California. Ms. Klaren has become a social media influencer of note with her rapid rise to the multi-million followers elite category. Ms. Klaren currently has over 5 Million Instagram followers and has her own website that is commercialized.

36.     That we know of, Klaren is depicted in the photo in Exhibit "D" to promote Golden Banana on its Instagram page. This Image was intentionally altered to make it appear that Klaren was either a stripper working at Golden Banana, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

37.     Klaren has never been employed at Golden Banana, has never been hired to endorse Golden Banana, has never been otherwise associated or affiliated with Golden Banana, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

38.     Rachel Bernstein a/k/a Rachel Koren is an international Model. She has walked runways for fashion shows in Miami's Mercedes Benz Fashion Week, filmed for travel TV show "Bikini Destinations" all over the world, shot for major campaigns in Los Angeles, CA, and is the face of many brands. Ms. Koren appeared in a campaign for MIDORI with Kim Kardashian and in the movie "Date Night" with Steve Carell and Tina Fey. She also played the character of "Sue Emory" in an episode of "The Closer" where she can be seen doing her own stunts. She has also been published in major campaigns and worked for companies including Nike, Reebok, Affliction Clothing, Volcom, Body Glove, Sinful, American Customs, Alo, Modern Salon Magazine, No Fear, Axe Body Spray, Paul Mitchell, Vibra Magazine, Launch Pad Magazine, Cut & Dry Magazine, Hairdo Magazine, Sunset Tan, Divine Boutique, Esquire Magazine, Vogue Magazine,

True Religion, Jessica Simpson Swimwear, Ed Hardy, Christian Audigier, Smet, Rebel X Magazine, SNI Swimwear, Tommy Bahama, Roma, J Valentine, Sunsets Inc, B Swim, Love Culture, Maxim, Viva Glam Magazine, Fantasy Lingerie, Elegant Moments, So Cal Swimwear, No Fear, Swim Magazine, American Honey, and Have Faith Swimwear.  She currently owns her own company, Cashmere Hair Extensions, which appeared on the show "Shark Tank" in 2013.

39.     That we know of, Koren is depicted in the photos in Exhibit "E" to promote Golden Banana on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Koren was either a stripper working at Golden Banana, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

40.     Koren has never been employed at Golden Banana, has never been hired to endorse Golden Banana, has never been otherwise associated or affiliated with Golden Banana, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

41.     Rosa Acosta started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a Bachelor in Art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she is nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Rosa moves to United States in 2006 where her career takes a new turn, distinguishing herself in several areas of the modeling world, featuring in

magazines, radio, tv programs and commercials and numerous music videos. She has 33,046 Facebook followers, over 1,600,000 Instagram followers, and 290,435 Twitter followers.

42.     That we know of, Acosta is depicted in the photo in Exhibit "F" to promote Golden Banana on its Website page. This Image was intentionally altered to make it appear that Acosta was either a stripper working at Golden Banana, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

43.     Acosta has never been employed at Golden Banana, has never been hired to endorse Golden Banana, has never been otherwise associated or affiliated with Golden Banana, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

44.     Abigail Ratchford born in Pennsylvania, is an American model and aspiring actress known for taking the Internet by storm in 2013. Abigail's deft use of social media, combined with the provocative pictures showcasing the brunette's 36DD-24-36 frame, proved a winning combination. This formula helped land her on numerous men's websites, a six page print spread in a popular Australian men's magazine, and also led to her being selected to audition for parts in Maxim, a feature film, and television shows found on ABC and E! Networks. She has over 9.1 million followers on Instagram, 4,200,085 followers of Facebook, and 807,494 followers on Twitter.

45.     That we know of, Ratchford is depicted in the photo in Exhibit "G" to promote Golden Banana on its Instagram page. This Image was intentionally altered to make it appear that Ratchford was either a stripper working at Golden Banana, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

46.     Ratchford has never been employed at Golden Banana, has never been hired to

endorse Golden Banana, has never been otherwise associated or affiliated with Golden Banana,

has received no remuneration for Defendants' unauthorized use of her Image, and has suffered,

and will continue to suffer, damages as a result of same.

47.    Keeley Hazell is an English model, musician, singer and actress. Hazell became

one of Britain's most successful glamour models, working with brands such as Page 3, FHM,

Loaded, Nuts and Zoo Weekly. She has also made numerous television appearances and has,

more recently, focused on her acting career, appearing in films such as Horrible Bosses 2 (2014).

Hazell was born on 18 September 1986 in Lewisham, London, England, and grew up in Grove

Park. She attended the Ravensbourne School in Bromley. Her mother, Amber, was a dinner lady,

and her father, Roy, was a window fitter; they separated when Hazell was 13 years old. At 16

years of age, Hazell left school to work as a hairdresser. Her colleagues persuaded her to try her

luck at modelling. At 17, she competed in The Daily Star's "Search for a Beach Babe" contest

and won. Still not old enough to pose on Page 3, she went to study fashion at Lewisham College.

Later, a friend told her about The Sun's Page 3 Idol competition. Despite some initial uncertainty

about entering the contest, she submitted some photos. She was eventually chosen the winner in

December 2004. She won £10,000 worth of "sexy clothes" and "a one-year membership of the

Rex cinema and bar". Another part of Hazell's Page 3 Idol win was a one-year exclusive glamour

modelling contract with The Sun. Hazell has been regularly featured in Nuts and Zoo. She has

been on the cover of The Sun's 2006 and 2007 Page 3 calendars, in addition to her own wall

calendars; the 2007 edition selling 30,000 copies in its first few days of release. In June 2005,

Hazell appeared on the front cover of Maxim magazine, and she also appeared on the front cover

of FHM in September 2005. In January 2006, she appeared on the front cover of Loaded

magazine. In 2008, Hazell and agent Ginny Mettrick co-founded a modelling agency called

Muse Management. In 2009, according to the August edition of Loaded, Peta Todd stated that Hazell had given modelling up to pursue a career in acting and that she was in America receiving acting lessons. Her last appearance on Page 3 of The Sun was on 30 September 2009. In January 2013, Hazell made another return to modelling by appearing in FHM. Hazell was the face of Sony Computer Entertainment Europe's Formula One 06 video game for PlayStation 2, PlayStation Portable, and F1 CE for PlayStation 3. She is currently the face of MotorStorm: Pacific Rift for PlayStation 3. Hazell had a small role in the full-length version of Cashback, playing "Frozen Girl in Sainsbury's". She was in talks with producers to be in a movie based on the television series Baywatch. In 2007, Hazell and IT expert Gary Schwartz co-presented Byte Me TV, an online programme that tried to explain technology in an easy to-understand way. In 2008, Hazell appeared in the BBC Three documentary Page Three Teens. Hazell released a pop music single called "Voyeur" in 2008. In 2010, Hazell had her first lead role in the short film Venus and the Sun, a comedic retelling of Ovid's myth, Venus and Adonis. Hazell had a small role in the film Like Crazy, which won both the Grand and a Special Jury Prize at the 2011 Sundance Film Festival. In 2012, Hazell played a supporting role in the British gangster movie St George's Day,[3] which was directed by Frank Harper. In 2015, Hazell landed a role in E!'s first scripted drama, The Royals, as "Violet". She auditioned twice for the role of Anastasia in the film Fifty Shades of Grey. Hazell starred in the 2013 comedy film Awful Nice and the 2015 horror film Whispers. She also appeared in the 2016 short film Queen of Hearts. She appeared in the 2018 TV Movie Vows of Deceit. Hazell was hailed by Conservative leader David Cameron in December 2006 as an "environmental hero" for her campaigns in The Sun, giving environmental tips such as turning lights off during the day. She was named alongside the likes of David Attenborough, Prince Charles, and Arnold Schwarzenegger in the Tories' list. Hazell

backed a major breast cancer awareness campaign for Breakthrough Breast Cancer. The campaign, called TALK TLC, aimed to promote Breakthrough's breast health message about the need to be aware of the signs and symptoms of breast cancer. Hazell has also signed up to take part in the Breakthrough Generations Study consisting of 100,000 women and spanning 40 years; the study aims to be the largest and most comprehensive of its kind. Hazell has also appeared naked in advertising posters for PETA, and she has been quoted as saying: "I believe that killing animals for vanity is wrong" and "Once you learn how the fur trade treats animals, it's impossible to think of wearing fur as sexy or glamorous."

48.     That we know of, Hazell is depicted in the photo in Exhibit "H" to promote Golden Banana on its Website page. This Image was intentionally altered to make it appear that Hazell was either a stripper working at Golden Banana, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

49.     Hazell has never been employed at Golden Banana, has never been hired to endorse Golden Banana, has never been otherwise associated or affiliated with Golden Banana, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

50.     Kimberly "Kim" Cozzens is a model and actress who has appeared on an Old Spice national commercial, as well as a New Amsterdam Vodka national commercial. She has modeled for campaigns with Guess, Old Spice, Grey Goose, Sephora Cosmetics, Con Air Hair Tools, Sketcher Shoes, and many more. She has also modeled for Maxim magazine, Sandals Resort, Dodge, and Pepsi to name a few. Kim in total, has signed with 12 top agencies internationally, two of them being LA Models and LATALENT.

51.     That we know of, Cozzens is depicted in the photo in Exhibit "I" to promote

Golden Banana on its Website page. This Image was intentionally altered to make it appear that Cozzens was either a stripper working at Golden Banana, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

52.     Cozzens has never been employed at Golden Banana, has never been hired to endorse Golden Banana, has never been otherwise associated or affiliated with Golden Banana, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business***

53.     Upon information and belief, Defendants operated, during the relevant time period, Golden Banana, where they engaged in the business of selling alcohol and food in an atmosphere where nude and/or semi-nude women entertain the business' clientele.

54.     Upon information and belief, and in furtherance of its promotion their promotion of Golden Banana, Defendants own, operate and control Golden Banana's social media accounts, including its Facebook, Twitter, and Instagram accounts.

55.     Defendants used Golden Banana's Facebook, Twitter, and Instagram accounts to promote Golden Banana, and to attract patrons thereto.

56.     Defendants did this for their own commercial and financial benefit.

57.     Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as a stripper working at Golden Banana, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

58.     Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed Golden Banana to receive certain benefits therefrom, including but not

limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

59.     As Defendants were at all times aware, at no point have any of the above-named Plaintiffs ever been affiliated with or employed by Golden Banana and at no point have any of the Plaintiffs ever endorsed Golden Banana, or otherwise been affiliated or associated with Golden Banana.

60.     All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for their use of their Images.

61.     As such, Plaintiffs have never received any benefit from Defendants' use of their Images.

***Standard Business Practices in the Modeling Industry***

62.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

63.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

*Defendants' Misappropriation of Plaintiffs' Images*

64.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Golden Banana by and through various marketing and promotional mediums including, without limitation, Golden Banana's website, Twitter, Facebook, and Instagram.

65.     Defendants showcased Plaintiffs' Images on Golden Banana's social media pages to create the false impression that Plaintiffs worked at Golden Banana, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

66.     Defendants did so to attract clientele to Golden Banana, promote Golden Banana, and thereby generate revenue for Defendants.

67.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Golden Banana.

68.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

69.     In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

70.     This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are strippers, endorse a strip club, or are otherwise associated or affiliated with a strip club.

71.     At no point were any of the Plaintiffs ever affiliated with Golden Banana, or Defendants.

72.     Each of Plaintiffs' Images was used without her consent.

73.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

74.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

75.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Golden Banana website, Twitter, Facebook, or Instagram accounts.

76.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

77.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

## FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)

78.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

79.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

80.     As set forth hereon, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at Golden Banana, or agreed to appear in Golden Banana's advertisements.

81.     Given the false and misleading nature of the advertisements, they had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

82.     Upon information and belief, said deceptive advertisements had a material effect

on the purchasing decisions of consumers who attended Golden Banana.

83.      Insofar as Defendants' published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

84.      Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

85.      Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

86.      Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

87.      Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)

88.      Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

89.      The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

90.      Defendants used Plaintiffs Images in order, *inter alia*, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Golden Banana, or worked at, sponsored, or approved of Golden Banana's goods, services or

commercial activities.

91.     This was done to promote and attract clientele to Golden Banana, and thereby generate revenue for the Defendants.

92.     Thus, this was done in furtherance of Defendants' commercial benefit.

93.     Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Golden Banana, nor worked at, sponsored, or approved of Golden Banana's goods, services or commercial activities, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Golden Banana.

94.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

95.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

96.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**THIRD CAUSE OF ACTION**
**(Common Law Right of Privacy)**

97.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

98.     As set forth hereon, Defendants have violated each Plaintiff's common law right to privacy under Massachusetts law.

99.     Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

100.     Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Golden Banana's website or related social media accounts as part of Defendants' advertising campaign.

101.     At all relevant times, Golden Banana's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

102.     Golden Banana's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

103.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

104.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

105.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

106.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Golden Banana.

107.    At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

108.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

109.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

110.    Defendants' actions are an unreasonable and/or serious interference with each Plaintiff's right of privacy.

111.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

## FOURTH CAUSE OF ACTION
### (Violation of *M.G.L. c. 214 § 1B*:  Right of Privacy)

112.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

113.    Defendants have violated each Plaintiff's statutory right to privacy under *M.G.L. c. 214, § 1B*.

114.    Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

115.     Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Golden Banana's website or related social media accounts as part of Defendants' advertising campaign.

116.    At all relevant times, Golden Banana's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

117.    Golden Banana's website and social media accounts were designed to attract

business to the Club and generate revenue for Defendants.

118.    Plaintiffs are informed and believe and hereon allege that the manner in which
Defendants posted and publicized their image and likeness in a manner that was hidden,
inherently undiscoverable, or inherently unknowable, in that Defendants published their image
and likeness on social media threads that, over time, are (for example, but not limited to)
"pushed" down in time from immediate visibility.

119.    Plaintiffs are further informed and believe and hereon allege that discovery will
prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via
different mediums, after the initial date of the posting of their image and likeness and through the
filing of this complaint.

120.    Plaintiffs are informed and believe and hereon allege that Defendants'
republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or
promote a different product.

121.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact
attract clientele and generate business for Golden Banana.

122.    At no point did any Defendant ever receive permission or consent to use any
Plaintiff's Image on their website or social media account.

123.    Defendants were at all relevant times aware that they never received any
Plaintiffs' permission or consent to use their Images on any website or social media account, or
on any other medium, in order to promote the Club.

124.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

125.    Defendants' actions are an unreasonable, substantial and/or serious interference
with each Plaintiff's right of privacy.

126. No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

## FIFTH CAUSE OF ACTION
### (Violation of *M.G.L. c. 214 § 3A*:  Unauthorized Use of Individual's Name, Portrait, or Picture)

127. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

128. As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

129. Within Massachusetts, Defendants' used each Plaintiff's image, photo, persona and likeness for advertising, trade, and/or commercial purposes in promotion of their strip club.

130. No Plaintiff ever gave Defendants' written consent, authorization, or otherwise granted permission to Defendants' to use her image for any advertising purposes, trade purposes, or any commercial purposes, or any other purpose whatsoever.

131. Defendants were at all times aware that no Plaintiff ever authorized Defendants to use her image in advertising.

132. As such, Defendants' misappropriation and publication of each Plaintiff's image in advertising was knowing and willful.

133. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

134. Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or

promote a different product.

135.    Defendants were at all relevant times aware that they never received any

Plaintiffs' permission or consent to use their Images on any website or social media account, or

on any other medium, in order to promote the Club.

136.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

137.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs'

Images.

138.    In addition to the actual damages suffered by Plaintiffs based on Defendants'

violation of this statute and given Defendants' willful and knowing misappropriation and

publication of each Plaintiff's image, Plaintiffs are entitled to treble damages.

## SIXTH CAUSE OF ACTION
### (Common Law Right of Publicity)

139.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the

preceding paragraphs as if fully set forth hereon.

140.    As set forth hereon, each Plaintiff has and had at the time of Defendants'

misappropriation a commercial interest in her image, photo, persona and likeness.

141.    Said commercial interest was developed by each Plaintiff through her investment

of time, effort and money in her career, image, persona and likeness.

142.    As set forth herein, Defendants used each Plaintiff's image and likeness for

commercial purposes by using same in Blush advertising.

143.    Defendants did so without any Plaintiff's consent, written or otherwise.

144.    Plaintiffs are further informed and believe and hereon allege that discovery will

prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via

different mediums, after the initial date of the posting of their image and likeness and through the

filing of this complaint.

145.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

146.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

147.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

148.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

149.    In addition, because Defendants' actions in misappropriating Plaintiffs' images and violating their common law right of publicity was willful and outrageous, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**(Violation of *M.G.L. c. 93A § 11*: Unfair Trade Practices)**

150.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

151.    Each Plaintiff, at all relevant times, was engaged in the conduct of a trade or commerce, such that they are considered a "business" under *M.G.L. c. 93A*.

152.    As set forth herein, Defendants embarked on a campaign of false and misleading advertising in order to convince potential consumers, including those located in Massachusetts, that Plaintiffs were either strippers at the Club, endorsed the Club, or were otherwise associated or affiliated with the Club.

153.    Such methods of advertising were unfair and deceptive, and constituted deceptive

and unfair trade practices under Massachusetts law.

154.    Defendants actions occurred primarily and substantially within Massachusetts.

155.    Defendants were at all times aware that no Plaintiff was a stripper at, had contracted to endorse or promote, or was otherwise associated or affiliated with the Club, but nevertheless published each Plaintiff's image.

156.    This was done for Defendants' commercial benefit, and to the detriment of Plaintiffs.

157.    Plaintiffs suffered actual money damages by reason of Defendants' unfair and deceptive advertisements by, *inter alia*, being deprived those monies Defendants should have paid them for their appearance in Defendants' advertisements.

158.    In addition to actual damages, and in light of Defendants' knowing, willful and repeated attempts to deceive consumers, Plaintiffs are entitled to treble damages, and attorneys' fees and costs, , as provided for under this statute.

159.    In addition to actual damages, to Defendants' unfair and deceptive acts may have the effect of causing such loss to each Plaintiff's business that Plaintiffs are entitled to injunctive relief.

## EIGHTH CAUSE OF ACTION
### (Defamation)

160.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

161.    As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote their Club to the general public and potential clientele.

162.    Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by the Club, that they endorsed the Club, or that they had some affiliation

with the Club.

163.    None of these representations were true.

164.    In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at the Club or endorsed the Club.

165.    Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

166.    In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

167.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

168.    Defendants' publication of Plaintiffs' Images constitutes defamation under Massachusetts law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

169.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per*

*se* under Massachusetts law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

170.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

171.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Massachusetts law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

172.    Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## NINTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

173.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

174.    Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

175.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not

deceptive or misleading in their advertising practices.

176.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

177.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

178.    Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

179.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

180.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

181.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Conversion)

154.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

155. Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

156. By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

157. As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

158. Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

159. As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

160. Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at the Clubs, or endorsed the Clubs.

161. Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

162. Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

163. Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their Clubs.

164. Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

165.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION
### (Quantum Meruit)

166.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

167.    Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

168.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

169.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendants have not compensated Plaintiffs.

170.    Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a)  For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through eleventh causes of action;

(b)  For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c)  For punitive and/or treble damages, in an amount to be determined at trial, based on Defendants' knowing and willful misappropriation of Plaintiffs' publicity and property rights and

deceptive trade practices;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and Massachusetts law, including but not limited to the statutory right to privacy; statutory unauthorized use of name, portrait or picture; and the *M.G.L. c. 93 A* unfair and deceptive trade practices act; and,

(e) For such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

PLAINTIFFS,

By their Attorneys,

/s/ Paul Sullivan
Paul V. Sullivan, BBO# 634466
Sullivan Whitehead & DeLuca LLP
86 Weybosset Street, Suite 400
Providence, RI  02903
Tel: (401) 861-9900
Fax: (401) 861-9977
psullivan@swdlawfirm.com

*and*

John V. Golaszewski
The Casas Law Firm, PC
1740 Broadway, 15th Floor
New York, New York
Tel:  (646) 872-3178
Fax:: (855).220.9626
john@casaslawfirm.com
*Pro Hac Vice Application Forthcoming

Dated:  July 1, 2019

- 33 -