UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TARA LEIGH PATRICK a/k/a CARMEN ELECTRA; CIELO JEAN "CJ" GIBSON; DENISE TRLICA a/k/a DENISE MILANI; JULIANNE KLAREN; RACHEL BERNSTEIN a/k/a RACHEL KOREN; ROSA ACOSTA; ABIGAIL RATCHFORD; KEELEY HAZELL; and KIMBERLEY "KIM" COZZENS,<br><br>*Plaintiffs,*<br><br>v.<br><br>D. & B. CORP. and MARK FILTRANTI,<br><br>*Defendants.* | Civil Action No.: **1: 19-CV-11445-LTS** |

## AFFIDAVIT OF GABRIEL SULTAN

1. My name is Gabriel Cardillicchio Sultan. My date of birth is September 1, 1997. I am a student at Brandeis University in Waltham, Massachusetts. I attended Brandeis for all four years of my undergraduate education and I majored in political science and history with a minor in legal studies. The following information is truthful and accurate to the best of my knowledge.

2. In the summer of 2019 I began a paid legal internship at the Law Office of Robert L. Sheketoff in order to further my experience in criminal law. Prior to interning for

Attorney Sheketoff, I worked as a summer law clerk at my father's law firm, Rankin & Sultan in the summer of 2018, and as a summer legal intern at the Middlesex County Juvenile Court under Judge Jay Blitzman (ret.) in the summer of 2017. As of September of 2019, all of my substantive legal experience was in criminal and juvenile law.

3. I first met Attorney Carlos Apostle in June of 2019, he introduced himself as Attorney Sheketoff's associate. Soon after we made our introductions, Attorney Apostle informed me of the numerous high profile civil cases that he was involved in, including lawsuits against rap artist Jonathan Kirk (AKA 'Dababy'), entertainer and television personality Nick Cannon, music artist Juaquin Malphurs (AKA 'Waka Flocka Flame'), and numerous entertainment companies and venues. Attorney Apostle would routinely discuss these cases with myself and my fellow summer intern, Augusto Gabriel. Attorney Apostle would often show Mr. Gabriel and I his files on these cases, and would occasionally ask Mr. Gabriel or I to perform a relatively simple task in relation to one of his civil matters, such as helping a client fill out a form or drafting demand letters. All activities I performed in relation to any cases having to do with Attorney Apostle were always reviewed and cleared by him personally.

4. In late August of 2019, as the summer internship came to a conclusion, I asked Attorney Sheketoff if he could continue to send me an occasional task to perform for him so as to maintain my relationship with the firm throughout the fall with hopes of returning in the spring of 2020 to work in a paid capacity again when my schedule allowed. Attorney. Sheketoff agreed, and I continued to do occasional work for him and Attorney Apostle on

an unpaid basis. It was around this time that Attorney Apostle began to refer to me as his 'paralegal'.

5. Due to my commitments at school, I was often in and out of the office on an irregular schedule during the 2019-2020 school year. Attorney Apostle and I would communicate by phone regularly to establish agendas and update one another on the progress of our work. I would also regularly leave draft documents on Attorney Apostle's desk for him to review, sign, and file.

6. In October of 2019, Attorney Apostle asked me to assist him in a civil case, he represented that I would be paid $100/hr for all work I performed. I informed Attorney Apostle that I did not have any experience in civil litigation or civil law and he responded by reiterating that he had a large portfolio of civil cases, and that it would be good for me to gain experience in civil law so that I could assist him in his other civil matters. I agreed to assist Attorney Apostle in the handling of this matter with the understanding that I would be responsible for performing tasks which he designated for me, and that Attorney Apostle would inform me of whatever procedures I needed to follow in accordance with the Federal Rules of Civil Procedure.

7. From October 14-20, 2019, per Attorney Apostle's request, I drafted an answer to the complaint in this matter. The answer was reviewed by Attorney Apostle, and was filed in person by myself and Attorney Apostle on October 21, 2019.

8. On December 4, 2019, Attorney Apostle instructed me to draft a letter informing opposing counsel of Attorney Apostle's intention to obtain depositions of their clients. The letter was conveyed to opposing counsel by certified mail.

9. In the weeks leading up to January 24, 2020, I was instructed to draft responses to the Plaintiffs' first set of disclosure requests. In the process of obtaining the requisite information, I requested information regarding insurance policies held by D. & B. Corp. from Eastern Insurance Company agent Michael Howlett in a January 17th email in which I stated: " [Dear Mr. Howlett] I hope you are doing well. I am writing on behalf of attorney Carlos Apostle, Attorney Apostle represents Peter Depesa and D & B. Corp. in a Federal Civil Action. In compliance with FRCP §26, Mr. Depesa and D & B. Corp. must disclose any insurance policies which may cover civil liability to the Plaintiffs. Mr. Depesa has represented to myself and Attorney Apostle that you are his insurance broker, if that is the case, please send a summary of the insurance policies held by D & B. Corp. to Attorney Apostle. He can be reached at carlosapostle@gmail.com. If you have any questions, please do not hesitate to contact me". Mr. Howlett got back to Attorney Apostle and I on January 20, 2020, and attached a copy of Entertainment Risk Policy No. ENHSGL 00519-00-16.

10. On January 24, 2020, Attorney Apostle instructed me to convey to opposing counsel via email my draft responses to the Plaintiffs' Rule 26 disclosure requests after he reviewed them. I did so.

11. On January 26, 2020 I began feeling incredibly ill, I visited the doctor the next day and was tested for and diagnosed with Mononucleosis. My ability to function at school and in my work with Attorney Apostle was severely hampered by my bout with Mono for the next several weeks. I notified opposing counsel of my illness on the 29th of January. During the next several weeks, I came into the office very rarely, and my work product

and communication with Attorney Apostle dropped off significantly as I recovered from my illness. Attorney Apostle was made aware of my diagnosis the day my test results came back, and repeatedly assured me that he would take care of everything in regards to outstanding work. I took this to mean that Attorney Apostle would be handling the document production process for this matter, as we were in communication with Mr. Depesa about gathering and turning over relevant documentary evidence at the time that I fell ill.

12. In regards to the collection and transfer of documents to opposing counsel, I worked with Peter Depesa by telephone and text message conversations from 1/10/2020 to 2/20/2020 to identify the relevant documents in his possession which we would need to compile and turn over. Mr. Depesa was always responsive and forthcoming about the documents he did have in his possession and could compile, and those which he did not. I notified Attorney Apostle that Mr. Depesa was in the process of compiling documents per Rule 26, and he indicated to me that he would talk to Mr. Depesa about the document disclosures. Attorney Apostle never followed up with me about the process of collecting and turning over documents, so I was under the impression that he was handling that process, especially due to the fact that Attorney Apostle had assured me that he would take care of everything while I was ill with Mono. Conversely, I never followed up with Attorney Apostle about the document disclosures, so it is possible that we miscommunicated about who was supposed to be in charge of collecting the documents and conveying them to opposing counsel.

13. In late January and early February of 2020, I worked with Peter Depesa to draft responses to the Plaintiffs' first set of interrogatories. On February 20, 2020, I completed my draft responses, and left three printed copies on Attorney Apostle's desk for him to review and sign. At that point, I was unaware that interrogatories had to be signed by the subject themself and not the subject's attorney. I also left two pre-addressed certified mail labels and envelopes, one addressed to Attorney Golaszewski and one addressed to Attorney Sullivan. The third copy was intended to be filed by Attorney Apostle, and had a sticky note placed on it which said 'sign and file'.

14. On January 25, 2020, opposing counsel requested further information regarding insurance policies held by D. & B. Corp. in the time period of the alleged misappropriation of the Plaintiffs' likenesses. After consulting with Attorney Apostle, I emailed opposing counsel a copy of the insurance policy I had received from Michael Howlett on January 29, 2020.

15. Opposing counsel responded requesting a coverage position letter. I made several phone calls to Entertainment Risk Co. in February of 2020 on Attorney Apostle's behalf requesting a coverage position letter.

16. On March 16, 2020, Attorney Apostle forwarded an email to me from Sedgwick Insurance with an acknowledgement letter which assigned insurance agent William Duffy to the claim. I then emailed the acknowledgement letter to opposing counsel on March 16, 2020.

17. On March 15, 2020, I traveled to Los Angeles with my girlfriend in order to stay with her and her family after Brandeis moved all classes online for the remainder of the semester.

About a week after I arrived in Los Angeles, a member of the household whom I had been in close contact with for several days tested positive for COVID-19. In early April, I began feeling ill with fevers, chills, and shortness of breath. I contacted my health provider's hotline for COVID-19, and was advised that due to my symptoms and my close contact with an individual who had tested positive, that I should presume that I was positive as well, this same advice was later repeated by a doctor at the Brandeis University Health Center. I notified my professors and Attorney Apostle of this development on April 9, 2020. My illness primarily impacted my ability to sleep, as it was at its worst at night. I also found that my ability to work for extended periods of time was hampered as well. I repeatedly discussed my illness with Attorney Apostle and asked for a reduced workload as I recovered because I could not work effectively. I specifically mentioned to Attorney Apostle on multiple occasions that I was fearful that things would slip through the cracks because I was functioning at a reduced capacity.

18. On April 14, 2020 I received a voicemail from William Duffy notifying me that he had been directed to me by Attorney Apostle, that he was in possession of a copy of the complaint, and that he was requesting an estimate of damages as no such estimate had been included in the complaint. I called him back and left a voicemail requesting a formal coverage letter. I also informed Mr. Duffy that Attorney Apostle was the primary contact for this case.

19. On April 15, 2020, opposing counsel and I had a telephone conversation in which I represented that I had been contacted by Mr. Duffy, and that it seemed as though Sedgwick would be covering the claim. Opposing counsel represented to me that he did

not see a reason why the alleged damages in this case would not be covered by the insurance policy held by D. & B. Corp, and I agreed. I also represented to opposing counsel that we did not have a formal coverage position letter yet, and I was unsure as to whether or not Sedgwick would want to hire its own counsel in this case.

20. On April 15, 2020, after consulting with Attorney Apostle, I sent Mr. Duffy an email in which I stated: "[Hi Bill,] I'm writing in response to your call yesterday morning. The plaintiffs' attorneys have not given us an estimate of what they are going to be seeking damages-wise, but I will ask them for a number this afternoon. I do need a coverage position letter which I can communicate to the court and to the plaintiffs' attorneys so if you could get me that as soon as possible that would be great. If you need any additional information in order to produce the letter, please let me know as soon as you can."

21. I have not heard from William Duffy at any point since his initial voicemail to me, I do not know if Mr. Duffy ever reached out to Attorney Apostle. Attorney Apostle never represented to me that he had received any additional correspondence from Mr. Duffy.

22. I have also not received any additional correspondence from Entertainment Risk or Sedgwick since Mr. Duffy's April 14th voicemail.

23. From May 10-12, I attempted to negotiate a formal employment engagement with Attorney Apostle. Attorney Apostle represented to me that he had no intention of entering into a formal employment agreement with me, and noted that we were not under any form of employment agreement at the time, and had not ever been during my engagement with him. At that point, I stated to Attorney Apostle that I could no longer work with him without a formal employment agreement. Attorney Apostle again refused to grant me a

formal employment agreement. I informed Attorney Apostle that I could no longer work with him on May 12, 2020. On May 27, 2020, Attorney Apostle wrote me a text which stated that I was "fired", in spite of the fact that I had ended my work relationship with him on the 12th of May.

24. On May 16, 2020, I reached out to William Duffy again to attempt to get a hold of him and redirect him to Attorney Apostle as I was no longer affiliated with Attorney Apostle.

25. On June 1, 2020, I entered into a second summer internship program with Attorney Sheketoff. Attorney Sheketoff informed me of the order from Judge Sorokin regarding the production of discovery in this matter, and asked me to attempt to gather what information I have access to so it may be turned over to opposing counsel. I was unaware of Attorney Sheketoff's involvement in this case until recently, as far as I knew during my involvement with this matter, the only attorney who had ever made an appearance or filed a document on the behalf of the defense in this case was Attorney Apostle.

Dated at Santa Monica, California

Date: June 6, 2020

**Signed under the pains and penalties of perjury**

Signature:   /s/ Gabriel Cardillicchio Sultan
             Gabriel Sultan